# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

Jonathan M. Arnold, #320526,                )    Civil Action No. 9:13-1273-JFA-BM
                                            )
                    Plaintiff,              )
                                            )
v.                                          )         **REPORT AND**
                                            )      **RECOMMENDATION**
South Carolina Department of Corrections,   )
Sgt, Smith, Lt. Cashwell, Larry Cartledge,  )
Mrs. Florence Mauney, Mrs. Harris,          )
Mrs. Grey, Mrs. Filmore, Mrs. Davis,        )
Mrs. Donald and Mrs. Amy Enloe,             )
                                            )
                    Defendants.             )
_____     )

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.

The Defendants[1] filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on May 6, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered

by the Court on May 16, 2014, advising Plaintiff of the importance of a dispositive motion and of the

need for him to file an adequate response. Plaintiff was specifically advised that if he failed to

adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff

---

[1]Two originally named Defendants, the Perry Correctional Institution and "Medical Mental," were earlier dismissed as party Defendants by Order of the Court filed August 20, 2013. See Court Docket No. 26.

1



thereafter filed memoranda in opposition to the Defendants' motion on July 2, 2014, July 24, 2014 and August 4, 2014.[2]

  The Defendants' motion is now before the Court for disposition.[3]

### Background and Evidence

  This case originally was two separate lawsuits. Plaintiff first filed <u>Arnold v. Smith, et. al.</u>, Civil Action No. 9:13-1273 on May 10, 2013. He then filed <u>Arnold v. Cartledge, et. al.</u>, Civil Action No. 9:13-1912, on July 12, 2013. A review of these two lawsuits revealed that each matter raised substantially the same issues; therefore, by Order filed August 26, 2013, the cases were consolidated, retaining Civil Action No. 9:13-1273. <u>See</u> Order (Court Docket No. 29).

  In his verified Complaint[4] filed in Civil Action No. 9:13-1273, Plaintiff, who at that time was an inmate at the Perry Correctional Institution, sought only injunctive relief. Plaintiff complained in this filing that he had a serious "fear for my life" due to "ongoing physical & mental harassment [ ] by the Defendants Smith and Cashwell", both correctional officers. Plaintiff alleges that he was "assaulted" by Smith with "handcuffs & leg shackles", apparently on March 6, 2013, when he was coming back from having received his morning insulin. Plaintiff also complains that

---

[2]Plaintiff also filed a document styled "motion for dispositive motions" (Court Docket No. 72), which the Court has also considered as a response to the Defendants' motion for summary judgment. <u>See</u> Court Docket No. 78.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]In this Circuit, verified complaints by <u>pro se</u> litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).



he was "stripped out" by Correctional Officers Williams, Cashwell, Harold, Smith, Mandeta, and Bowman and left in his room "naked", with Smith "grinning" and Cashwell "grabbing me on my buttocks [and] telling me to shut up".  Plaintiff also complains that on another occasion he was sprayed with "fogger".  Plaintiff also alleges that Nurses Green and Thomas know he is a diabetic with high blood pressure, glaucoma, and asthma, but that these nurses did "nothing to make sure I was ok".[5]  Plaintiff also complains about receiving the wrong diet trays, but that no one at the Perry Correctional Institution will help him.  Plaintiff asked to be transferred to another institution; "somewhere safer with better medical treatment".  See generally, Plaintiff's Verified Complaint (styled "Motion for Temporary Injunction").

In his original Complaint filed in Civil Action No. 9:13-1912, Plaintiff asserts jurisdiction for his claims under § 1983, but also states that he is invoking the "pendant jurisdiction" of this court to hear claims arising from the State constitution, to South Carolina Code of Laws, and common laws.  In that verified pleading, Plaintiff alleges that he is housed in the Special Management Unit (SMU) at the Perry Correctional Institution, where the Defendants Cartledge (Warden of the institution) and others have been deliberately indifferent to his serious medical needs and have also subjected him to unconstitutional conditions of confinement by providing medication without gloves, not providing clean rooms, subjecting him to sleep deprivation from lights staying on in his cell twenty hours a day, inadequate recreation, extended confinement and punitive isolation, inadequate access to publications and photographs, including religious publications, and use of strip cells and chemical munitions.  Plaintiff seeks an order from this Court requiring the Defendants to provide him with adequate resources to prosecute his claims, and requiring the Defendants to

---

[5]These two nurses are not, however, named Defendants in this case.



"develop and enforce written policies/procedures approved by the court" that will prevent violations of his constitutional rights in the future. Plaintiff again seeks transfer to a different institution as well as a permanent injunction against the Defendants prohibiting them from engaging in their unconstitutional practices, as well as monetary damages against the Defendants. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in this case, the Defendants have submitted an affidavit from the Defendant Amy Enloe, who attests that at the time of the matters alleged in the Complaint, she was employed as a nurse practitioner with the SCDC. At that time, Plaintiff was an inmate at the Perry Correctional Institution.[6] Enloe notes in her affidavit that Plaintiff has in various paragraphs of his Complaint alleged that either she or other unidentified individuals, as well as other named individuals who are not defendants in this case, were deliberately indifferent to his medical needs on various dates in 2012 and 2013. Enloe further notes that Plaintiff's medical complaints center around his diabetes, as well as alleged mental and dental problems. However, Enloe attests that Plaintiff's SCDC medical summaries[7] for the time periods identified by Plaintiff in his Complaint reflect that Plaintiff's blood sugars have been routinely checked and he has received treatment with insulin for his diabetes, while being devoid of any mental health or dental complaints by the Plaintiff or indicating that Plaintiff needed evaluation and treatment in these areas. Enloe further attests that from May 20, 2012 through April 9, 2013 (covering the time period encompassing Plaintiff's allegations), Plaintiff had 740 documented health care encounters, during which he

---

[6]Plaintiff is no longer an inmate at the Perry Correctional Institution, having been transferred to the Lieber Correctional Institution. See Court Docket No. 86 [Change of Address Notice].

[7]The medical summaries themselves have not been submitted by the Defendants as an exhibit.



4

received health care.  Enloe further attests that Plaintiff continues to receive care and treatment for his chronic complaints, and that he has even been referred to specialty clinics for evaluation and treatment on numerous occasions for various problems, when necessary.  Enloe attests that there has been no deliberate indifference regarding the care and treatment of Plaintiff's complaints, and that in any event the non-medical Defendants, including administrators and correctional officers, were never involved in Plaintiff's care and treatment, did not make any decisions regarding Plaintiff's care and treatment, and did not deny Plaintiff access to care and treatment.  See generally, Enloe Affidavit.

        In opposition to summary judgment, Plaintiff has submitted an affidavit as well as numerous documents.  In his affidavit, Plaintiff reiterates his claim about being placed in a "strip" cell during which the Defendant Smith touched his "buttock".  Plaintiff also complains that he was gassed with "red fogger" (437.4 grams) in deliberate disregard of his chronic asthma and glaucoma. Plaintiff also complains in his affidavit that he had requested safety glasses for his glaucoma, but that the Defendant Enloe would only provide him with regular glasses, causing him long term damage. Plaintiff further complains that he has suffered seven diabetic seizures as a result of Enloe's medical and treatment decisions.  Plaintiff also claims that on one occasion Enloe ordered him a pill that could have killed him (apparently Naproxen).  Plaintiff complains in his affidavit that the Defendants are lying about him and not following their own rules and regulations, including that he is not being provided with his paperwork, as well as that he is being subjected to some form or retaliation, although this is not clear from the affidavit.  See generally, Plaintiff's Affidavit.

        Plaintiff's various documents include a letter regarding Plaintiff's request for orthopedic shoes, with Plaintiff being advised by Dr. John Tomarchio (Medical Director for SCDC Health Services) that a review of Plaintiff's records did not document any problem requiring



orthopedic shoes. Plaintiff has also attached copies of some grievance documents wherein he complains about the cleanliness of his cell, with a response from the Warden advising Plaintiff that he has not been made to go without cleaning his cell, and that it is his choice to clean his cell or refuse to do so, as well as outlining the cleaning procedure to be followed on cell cleaning day.

Plaintiff has also provided what appear to be some computer printouts of sheets discussing the effects of Naproxen tablets, copies of various prison and state court grievance documents, and a copy of a response to inmate correspondence addressed to him from the ADA coordinator at the Perry Correctional Institution addressing Plaintiff's medical issues. This response, dated July 12, 2013, states in relevant part:

> I have reviewed your medical history and see where you have been regularly receiving your insulin and it appears that Health Services has worked out the problems with your receiving a snack bag. You are currently prescribed several medications for your health conditions to include: Hydrocerin, Naproxen, Nortriptylyne, Risperdal, Propranolol, Novolin, Clotrimazole, Ventolin, Zolft, Lisniopril, and Trimacinolome. Please be sure to take all of your medications as directed. I have discussed your health concerns with the health professionals and have been assured that your case is being followed on a regular basis.

Plaintiff has also submitted copies of several Request to Staff Member forms with responses indicating that Plaintiff is receiving numerous medications for his medical complaints. In response to a grievance addressing mental health concerns from February 2013, the Warden noted in his response:

> Your concerns have been discussed with Ms. Atkinson & Ms. Goodwin, CCC and Mental Health notes reviewed. Per Ms. Atkinson and Mental Health notes you were seen by a Mental Health Staff at PCI each month as scheduled. Both Ms. Atkins[on] and Ms. Goodwin voiced that you seem to be making good progress prior to your transfer to LCI and that your treatment plan appeared to be working in your favor. If you have any future Mental Health issues please feel free to address them with your



current CCC.  Based on this information and your transfer to LCI,[8] I consider your grievance resolved.

In another document, Plaintiff is complaining that his teeth have been "aching & hurting" and asks to have his teeth cleaned.  This document bears a response (signature illegible) indicating that it is difficult to have inmates escorted to the dental clinic, so that inmates in lockup are usually only seen when they have urgent dental problems.  The response further states that "I will place you on the list for cleaning from lock-up but I don't know if we will get to you.  If you have severe pain or swelling, submit a request stating that or have an officer call us".

In response to another grievance from February 2013 the Warden notes that, according to Plaintiff's medical records, he had refused blood sugar checks and insulin twenty-three times during the time frame of 2/13/13 through 4/17/13.  In response to another grievance from November 2012, the Warden states that Plaintiff's medical notes show that he is seen on a daily basis when he is not gone for an outside appointment, and that it is in the Plaintiff's best interest to take his medication as directed and not to refuse it.

In a grievance dated January 2013, Plaintiff complains about his dietary needs due to his diabetes.  The response to this grievance states:

> The nurse practitioner was aware of your diabetes when she approved you to be put on the Nutraloaf with blood sugar monitoring.  You refused some of the finger-stick monitoring ordered for you.  However, I see no indication that you experienced any problems because of the decision by the [nurse practitioner].  There is no indication for you to be transferred to another yard as you request.

In the response section to another grievance from August 2012, the Warden states that:

> It is in your best interests to take your medicine as directed and not to refuse it as this can cause fluctuations in your blood sugar levels.  As for your claims of not receiving

---

[8]By this time, Plaintiff had apparently been transferred to the Lieber Correctional Institution.



7

proper food, you are on a 3,000 calorie diabetic diet with a snack which, per medical, is the appropriate diet for you.

Plaintiff's exhibits also include an Incident Report from January 22, 2013 which states that on that date Plaintiff became disrespectful, threatening and refused to give up his Lancet during his insulin shot. The Defendant Cashwell then informed the Defendant Captain Williams of this incident, who instructed Cashwell to place Plaintiff in a control cell. The Incident Report further reflects that Cashwell, Williams (who is not a named Defendant) and Smith then went to Plaintiff's door and gave him a directive to come to the door to be restrained, but that Plaintiff refused and threw an unknown liquid substance at the officers, striking Cashwell, following which Cashwell used chemical munitions and a force cell movement team was assembled and entered the cell. The Incident Report reflects that Plaintiff was restrained, following which he was seen by Nurse Green. The Incident Report reflects that 437.4 grams of fogger was used during this incident. In a response to a grievance dated April 23, 2013 (apparently relating to this incident), responding to an accusation by Plaintiff that Smith had used excessive force and sexually abused the Plaintiff, states:

It appears that your poor behavior resulted in a use of force against you. When you pulled away from the escorting Officers, a use of force was necessary to bring you into compliance. Reports also show that you were seen by medical after the incident and stated "I'm good, I'm straight". Medical reports you had no injuries.

In response to a grievance from June 2012, the Warden responds:

Per Policy 22.12; 10.1 an inmate assigned to the SMU will be strip searched at any time that s/he exists or enters his/her cell. Procedures used in strip searching are a necessary measure for the safety of the Institution and are in no way used to harass or abuse.

In response to a grievance from December 2012 relating to exercise, the Warden responds:



Per Policy, SMU inmates will be afforded out-of-cell recreation privileges five (5) days per week, (1) hours per day, weather permitting or unless safety and security reasons dictate otherwise. This decision is made by the SMU Captain based on conditions at the time. Safety and security of both staff and inmates take priority.

Finally, Plaintiff has submitted numerous affidavits from fellow inmates, who attest that they have witnessed or overheard how Plaintiff is treated by the medical staff and security officers at the Perry Correctional Institution. These affiants in general make such statements as that it "seems as if they have developed a vendetta against [the Plaintiff] because of his prior disciplinary history". They note Plaintiff complains about his diet trays (with responses from the serving officers that he should take the issue up with medical or the kitchen), that on one occasion (12/1/12) Plaintiff was subjected to chemical munitions and then handcuffed after complaining about a diet tray, following which he was placed back into his "gas filled" room without the opportunity to shower, that Plaintiff was left in a strip cell for long periods of time, that he has not been provided with the proper shoes, that at least on one occasion he was not allowed to clean his cell, that on occasion Plaintiff has been overheard asking about his medication, that they are not aware of Plaintiff having refused his medications, that officers "have refused the Plaintiff medication for reasons unjustifiable then tell higher officials that he voluntarily refused his insulin", that on January 15, 2014 Plaintiff asked the individual passing out legal mail to notarize something for him, but that Plaintiff was told he would have to wait until Thursday, that it is extremely difficult to obtain legal research materials in the SMU, that Plaintiff has had legal material improperly taken out of his cell, and that on October 24, 2013 Plaintiff either passed out or became unconscious due to low blood sugar and that it took 30 to 45 minutes before medical personnel gave him something to raise his blood sugar back up. See generally, Plaintiff's Exhibits, and Inmate Affidavits.



## Discussion

The Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

### (Injunctive Relief)

Initially, the undersigned is constrained to note that Plaintiff's complaints generally center around his desire to be transferred from the Perry Correctional Institution to the Lieber Correctional Institution, where Plaintiff apparently believes he can receive better medical care for his complaints. The docket in this case reflects that Plaintiff has now been transferred to the Lieber Correctional Institution. Therefore, to the extent Plaintiff was complaining about conditions of his



10

confinement while at PCI and was seeking through the initiation of this lawsuit a transfer to the Lieber Correctional Institution, that relief has already been obtained and his related requests for injunctive relief are moot.  See Williams v. Griffin, 952 F.2d at 823 [”[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.”]; Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]; United States Parole Commission v. Geraghty, 445 U.S. 388, 397 (1980) [Noting that the issue in controversy must "exist at the commencement of the litigation . . . [and] must continue throughout its existence"]; Powell v. McCormack, 395 U.S. 45, 496 (1969) ["[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"].

However, to the extent Plaintiff is seeking monetary damages for alleged deprivations of his constitutional rights while he was housed at the Perry Correctional Institution, those claims survive his transfer to the Lieber Correctional Institution.  Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976).

## II.

### (Medical Claims)

With respect to Plaintiff's claims concerning his medical care, in order to avoid summary judgment Plaintiff would need to have submitted evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977);



Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence.

Plaintiff makes general and conclusory assertions in his Complaint that the Defendants have failed to provide him with adequate medical care, in particular with respect to his diabetes, and in support of this claim has submitted copies of numerous grievances and/or Requests to Staff Member forms Plaintiff filed with prison authorities wherein he complained about his medical care and treatment. Plaintiff has also submitted some affidavits from fellow inmates wherein those inmates also "attest" that the medical care and treatment Plaintiff received for his complaints was inadequate. However, other than Nurse Enloe, none of the Defendants named in this action are medical providers. As such, even if he was otherwise able to show that the medical professionals at the prison did in fact provide him with inadequate medical care, none of these other named Defendants are subject to liability for Plaintiff's claims arising out of his medical care. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837.

Further, even with respect to the Defendant Enloe (or, alternatively, to the extent any of the *other* named Defendants could be deemed to have had any responsibility for the adequacy of the medical care Plaintiff received), there is no evidence before the Court to show that any Defendant



12

violated Plaintiff's constitutional rights. Not only have the Defendants provided an affidavit from a medical professional (Nurse Enloe) attesting that Plaintiff received prompt and appropriate care for his medical problems and complaints, but Plaintiff's own exhibits as discussed and cited hereinabove reflect that Plaintiff was receiving regular medical care and attention for his medical complaints. While Plaintiff's exhibits, to include multiple grievances and Requests to Staff Member forms, certainly chronicle Plaintiff's belief that he was not receiving adequate medical care for his complaints, that is all Plaintiff's exhibits document - i.e., that he personally did not believe he was receiving proper care and that he wanted to be transferred from Perry to Lieber, where he believed the medical services are better. However, none of Plaintiff's exhibits contain or cite to probative evidence that Plaintiff's constitutional rights were being violated. To the contrary, many of Plaintiff's exhibits confirm that Plaintiff was in fact receiving medical care for his complaints. Plaintiff's own subjective allegations and complaints concerning the quality of medical care he was receiving, standing alone and without any supporting evidence, are simply not sufficient to allow this claim to proceed as a constitutional violation for deliberate indifference to a severe medical condition. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

   While Plaintiff may not agree with the extent and nature of the medical care he received during the relevant time period, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence other than his own subjective opinion, and expect to survive summary judgment,



particularly when the Defendants have submitted evidence to show that Plaintiff had 740 documented health care encounters during this time period during which he received medical care (a number Plaintiff has not disputed), and when Plaintiff's own exhibits reflect that the Defendants were providing Plaintiff with medical care as well as where the Defendants have submitted sworn testimony from a medical professional which refute his claims. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

In sum, Plaintiff's personal lay opinion notwithstanding, nothing in the evidence and exhibits before the Court gives rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]. Therefore, Plaintiff's medical claim is without merit and should be dismissed.



## III.

### (Excessive Force Claim)

Although it is not clear from a plain reading of the allegations of the Complaint, to the extent Plaintiff has asserted an "excessive force" claim, that claim apparently arises out of an incident where Plaintiff was placed in a stripped out control cell during which Plaintiff alleges he was touched on the buttocks by one of the prison guards, and from an incident where he was subjected to chemical munitions when he refused to comply with commands while in his cell. The undersigned will discuss these two claims in turn.

**Claim One**. First, with respect to Plaintiff's claim that he was "assaulted" with handcuffs and was touched on the buttocks by Cashwell while being placed in a strip cell, Plaintiff's allegations with respect to this claim simply fail to set forth a constitutional violation. There is nothing unconstitutional about a prisoner being temporarily placed in a "strip cell", and Plaintiff cannot maintain an excessive force claim based on the simple, conclusory statement that he was "assaulted" by being forced to wear handcuffs. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. See generally, Sandin v. Connor, 515 U.S. 472, 478 (1995); cf. Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Crowe v. Leeke, 259 S.E.2d 614, 615 (1979); cf. Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir. 1998) [strip searches constitutional absent evidence they were performed for purposes of harassment or punishment]; Dixon v. Toole, No. 04-183, 2006 WL 1038433 at * 5 (S.D.Ga. Apr. 13, 2006)[Holding that

15



placement in a stripped suicide cell for two days did not violate "the minimal civilized measure of life's necessities."], <u>aff'd</u>, 225 Fed.Appx. 797 (11th Cir. Apr. 4, 2007); <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332-333 (9ᵗʰ Cir. 1988) [strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next]; <u>Weens v. Lawrence</u>, No. 09-65, 2009 WL 2422795 at * * 2-3 (S.D.Ga. Aug. 6, 2009)[shackling pre-trial detainee during exercise did not violate Fourteenth Amendment]; <u>Ruffino v. Lawrence</u>, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions].

   As for Plaintiff's claim of being touched on his buttocks, although Plaintiff is not required to show that he suffered more than a <u>de minimis</u> injury to maintain an excessive force claim; <u>see</u> <u>Wilkins v.</u> <u>Gaddy</u>, 130 S.Ct. 1175, 1179-1180 (2010) [Noting that the notion that significant injury is a threshold requirement for stating an excessive force claim was rejected in <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. <u>Wilkins</u>, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973). Here, not even Plaintiff alleges that he received any physical injury, and the mere "touch" of his buttocks by the Defendant Cashwell under the circumstances alleged fails to give rise to a constitutional claim for excessive use of force.

   Further, to the extent Plaintiff's claim is not based on an alleged excessive use of



16

force, but is instead simply based on a claim of inappropriate touching of him by Cashwell, Plaintiff

has again failed to present facts to show a constitutional violation. Cf. Boddie v. Schnieder, 105 F.3d

857, 861 (2nd Cir. 1997)[No Eighth Amendment claim where plaintiff asserted only a small number

of incidents in which he was "verbally harassed, touched and pressed against without his consent,"

with no single incident being severe enough to rise to the level of an Eighth Amendment violation];

Hughes v. Smith, 237 F.Appx. 756, 759 (3rd Cir. 2007)[Holding that a single pat-down frisk in which

a correctional officer allegedly touched Plaintiff's testicles through his clothing, accompanied by no

overt sexual comments did not rise to the level of an Eighth Amendment violation]; Berryhill v.

Schriro, 137 F.3d. 1073, 1076 (8th Cir. 1998)[No Eighth Amendment claim where Plaintiff suffered

nothing more than a brief unwanted touch on his buttocks with no evidence that the incident involved

undue force or sexual assault or advancement]; Williams v. Silverman, No. 12-974, 2013 WL

6578980, at * 4 (E.D.Pa. Dec. 16, 2013).  Therefore, the Defendants are entitled to summary

judgment on this claim.

    **Claim Two**.  With respect to Plaintiff's complaint about being subjected to chemical

munitions, however, Plaintiff has alleged that on January 22, 2013 he was sprayed with chemical

munitions by correctional officers Cashwell and Smith, who then used a force team to extract him

from his cell, following which he was placed back in his chemically contaminated cell without having

been provided an opportunity to shower or for the cell to be cleaned, and where Plaintiff was

thereafter forced to remain for an extended period of time.  Plaintiff has also submitted affidavits

from fellow inmates to support this claim.  In response to these allegations and Plaintiff's evidence,

the Defendants have not only failed to present any evidence of their own to contest these allegations,



17

but have failed to have even address this claim in their brief.

   While the use of chemical munitions to compel compliance by inmates with prison rules is constitutional when used appropriately; <u>cf</u>. <u>Bailey v. Turner</u>, 736 F.2d 963, 969-970 (4th Cir. 1984); Plaintiff's (unrefuted) contention that his constitutional rights were violated when the Defendants sprayed him with chemical munitions and then refused to let him shower or otherwise decontaminate after subjecting him to a chemical spray in his cell, a claim supported by affidavits from other inmates, is sufficient to survive Defendants' summary judgment motion wherein this claim was not even addressed. <u>See</u> <u>Mann v. Failey</u>, No. 13-6446, 2014 WL 3511878, at * 5-6 (4th Cir. July 17, 2014) [Finding that in light of prisoner's sworn statement that, after being sprayed with chemical munitions, he was not allowed to take a shower and/or was placed in a cell that had not been decontaminated, "a reasonable jury could infer from this evidence that [the prisoner] has adequately established both the subjective and objective prongs of his Eighth Amendment claim"]; <u>see</u> <u>also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986)[Inmates are protected under the Eighth Amendment from the unnecessary and wanton infliction of pain]; <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996)[Excessive force claim stated where plaintiff demonstrates a sufficiently serious deprivation or injury inflicted by a prison official acting with a sufficiently culpable state of mind]. Therefore, the Defendants Cashwell and Smith are not entitled to summary judgment on this claim.[9]

---

[9]Although the Defendants have also asserted the defense of qualified immunity, the Defendants Cashwell and Smith would not be entitled to qualified immunity from suit for this claim, as it was clearly established at the time of this event in 2013 that use of chemical munitions against prisoners, and particularly failing to afford a prisoner thereafter an adequate opportunity to wash, etc.

(continued...)



However, Defendants do correctly note that the doctrine of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 at n. 1-2 (4th Cir. 1997). Hence, an employer or supervisor is not liable for the acts of their employees absent an official policy or custom for which they were responsible which resulted in illegal action by their employees. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fischer v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982). Plaintiff has presented no evidence to show, and indeed has not even alleged, that any named Defendant other than Cashwell and Smith were involved in the incident where he was subjected to chemical munitions on January 22, 2013. Therefore, all of the Defendants except for Cashwell and Smith are entitled to dismissal as party Defendants with respect to this claim. Martin v. Sargent, 780 F.2d 1334 (8th Cir. 1985)[In order to be liable in a § 1983 action Plaintiff must show that the named defendant was personally involved in, or directly responsible for, the incident that injured the Plaintiff.].

## IV.

### (General Conditions of Confinement)

The remainder of Plaintiff's assertions regarding the conditions of his confinement are essentially a hodge podge of varying conclusory claims and allegations, none of which are

---

[9](...continued)
(for which there is a genuine issue of fact in this case), could give rise to a constitutional claim. Williams, 77 F.3d at 768; Mann, 2014 WL 3511878, at 5 [Noting that the Fourth Circuit had previously held in Williams that the denial of decontamination could give rise to an Eighth Amendment claim]; see also Harlow v. Fitzgerald, 457 U.S. 800 (1982) [Government officials performing discretionary functions generally are shielded from liability for civil damages only insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have know].



supported by evidence sufficient to allow these claims to proceed.  During the time period at issue, Plaintiff was a prisoner in a state penitentiary, not a hotel.  It is to be expected that conditions of confinement under such circumstances are often times less than ideal.  Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988).  Therefore, the only issue for this Court to decide is whether Plaintiff has submitted evidence sufficient to give rise to a genuine question of fact as to whether the conditions under which Plaintiff was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment.  There is no such evidence.

First, Plaintiff's dissatisfaction with his security or custody status while he was at PCI[10] is, by itself and without any evidence showing a constitutional violation occurred, insufficient to maintain a claim.  Cf. Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].  Otherwise, Plaintiff's claims are so general and conclusory, lacking in specificity or detail, and unsupported by any documentary or affidavit evidence, that there is no basis on which to allow these

---

[10]As previously noted, Plaintiff is no longer even at the Perry Correctional Institution.  He is now at the Lieber Correctional Institution, which is where Plaintiff indicates in his pleadings he wanted to be all along.



20

claims to proceed.  See generally Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Farmer, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"].

While Plaintiff complains about the amount of exercise he was allowed while in the SMU at PCI, he provides no specifics to establish a constitutional violation, while his own exhibits indicate that he was being provided exercise opportunities pursuant to establish prison policy. Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see also Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * * 5-6 (7th Cir. Apr. 6, 1005)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]; Ruffino v. Lawrence, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions].  Plaintiff's general and conclusory complaints about not being allowed adequate access to the Courts because he was not provided with sufficient supplies such as pen and paper or time in the law library are also, without any supporting *evidence*, insufficient to survive summary judgment. See Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue]; Cochran v.

21



Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"].

    Plaintiff's general and conclusory claims concerning his inability to receive or retain photographs and other publications, again without any supporting evidence as to what exactly was happening or specific restrictions to which he was subjected, similarly fail to state a claim.  See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; see also White v. White, 886 F.2d 721, 723 (4th Cir. 1999)["Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations"]; Couch v. Jabe, No. 11-34, 2012 WL 3043105 at * 7 (W.D.Va. July 25, 2012)["Prison officials undoubtedly have the right to screen mail entering a correctional facility to prevent the introduction of items that undermine security, good order, discipline, or rehabilitation."].  Stroman v. Byars, No. 10-3240, 2012 WL 2873762, at * 3 (DSC June 13, 2012), adopted by, 2012 WL 2873747 (D.S.C. July 13, 2012)[MSU ban on personal photographs not a violation the First Amendment]; Corey v. Reich, No.



22

02-2801, 2004 WL 3090234 (D.S.C. March 9, 2004) [Upholding SCDC policy restricting prisoners'

ability to receive magazines, books, mail, or other materials in the MSU, and finding that this policy

did not violate the prisoners' constitutional rights], aff'd by 2004 WL 1730327 (4th Cir. Aug. 3,

2004); Wiles v. Ozmint, No. 05-2111, 2006 WL 2260136, at * 10 (D.S.C. Aug. 7, 2006)[Prohibition

on the receipt by mail of magazines, newspapers and books in the MSU, and restriction on

photographs being allowed in MSU cells, held constitutional]; Williams v. Ozmint, No. 07-2409,

2008 WL 4372986, at ** 5-6 (D.S.C. Sept. 22, 2008)[SCDC Policy No. OP-22.11 limiting access

to books, magazines and photographs for inmates in the MSU constitutional]; Loveless v. Lee, 472

F.3d 174, 200 (4th Cir. 2006)[Finding that free exercise restrictions that are "reasonably adapted to

achieving a legitimate penological objective" are permissible]; Vasquez v. Frank, No. 05-528, 2005

WL 2740894 at *12 (W.D.Wisc. 2005) ["[R]estrictions on a[n] inmate's receipt of...photographs as

part of an incentive program were reasonably related to the prison's legitimate interest in promoting

good behavior"], aff'd in part, vacated in part (on other grounds), 2006 WL 3623044 (7th Cir. Dec.

13, 2006); Ramirez v. McCaughtry, No. 04-335, 2005 WL 2010173 (W.D.Wisc. 2005) [upholding

policy that restricted access to newspapers, magazines, and photographs to inmates in segregation

as part of an incentive system for good behavior]; Gregory v. Auger, 768 F.2d 287, 290 (8th Cir.

1985) [restrictions on certain types of correspondence, including junk mail, newspapers and

magazines serve a legitimate penological objective of "deterrence of future infractions of prison

rules"]; Savko v. Rollins, 749 F.Supp. 1403, 1409 (D.Md. 1990) [Limitation on the amount of in-cell



religious reading material contained in prison regulation is constitutional under <u>Turner</u>[11] standards].

Plaintiff's remaining general and conclusory claims dealing with his food, the general conditions of his cell, and other such matters also fail for lack of evidentiary support (indeed, many of Plaintiff's own exhibits, such as those reflecting that Plaintiff *was* receiving a special diet due to his medical conditions, contradict Plaintiff's claims of constitutional violations). Plaintiff cannot simply voice dissatisfaction with the conditions of his confinement and maintain a claim for a violation of his constitutional rights. Rather, he must submit some evidence to show that a constitutional violation is occurring. <u>See</u> <u>generally</u>, <u>Rish</u>, 131 F.3d at 1096 ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; <u>Alberti v. Klevenhagen</u>, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]; <u>Farmer</u>, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; <u>Huertas v Secretary Pennsylvania Dep't of Corrections</u>, 533 Fed.Appx. 64, 67-68 (3d Cir. Aug. 9, 2013)[Constant illumination for security purposes did not rise in that case to constitutional violation]; <u>Williams v. Ward</u>, 567 F.Supp. 10, 13, 15 (E.D.N.Y. 1982)[holding that keeping hallway lights on all night did not violate a constitutional right even where Plaintiff claimed inability to sleep]; <u>Cassidy v. Superintendent</u>, 392 F.Supp. 330,

---

[11]<u>Turner v. Safley</u>, 482 U.S. 78 (1987). Under <u>Turner</u>, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Id.</u>, at 89.



334 (W.D.Va. 1975)[holding that "flood[ing] a cell with a bright light twenty-four hours a day" was constitutional where the lights were allowed guards to check the cells, the lights were not bright enough to interfere with prisoners' sleep, the prisoner chose to stay in that particular cell, and the light was not used in a "vindictive manner"], aff'd in part, rev'd in part and remanded, 529 F.2d 514 (4th Cir. 1975) (grounds for reversal not provided); Bauer v. Sielaff, 372 F.Supp. 1104, 1110 (E.D.Pa. 1974)["[T]he discomfort of lights at night do[es] not constitute a constitutional deprivation."].

Further, and significantly, Plaintiff has presented no evidence whatsoever to show he suffered a compensable injury as a result of any such conditions of confinement. Cf. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]. Beverati v. Smith, 120 F.3d 500, 505, n. 5 (4th Cir. 1977)[finding that inmate's alleged confinement for six months in deplorable conditions failed to state Eighth Amendment claim where there was no evidence that conditions "resulted in serious physical or emotional injury or the grave risk of such harm"].[12]

---

[12]Plaintiff has also asserted numerous other complaints in his pleadings which do not appear to actually be causes of action for relief, such as that various Defendants may have been retaliating

(continued...)



# V.

### (State Law Claims)

Liberally construed, Plaintiff's pleadings assert pendant state law causes of action, although it is unclear what specific state law claims may be being asserted.[13]  Pendant jurisdiction would be necessary to retain these claims, as § 1983 does not provide a separate jurisdictional basis for retaining any such claims.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of

---

[12](...continued)

against him or laughed at him, or were not following their own policies in dealing with him, etc. However, even if these other assertions, generally sprinkled throughout his narrative in his pleadings, were intended to themselves be claims for relief, they would be without merit.  See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curium) [speculative and conclusory allegations cannot support retaliation claim]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]; Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Morva v. Johnson, No. 09-515, 2011 WL 3420650 at * 7 (W.D.Va. Aug. 4, 2011)[Plaintiff failed "to establish that a Defendant violated a constitutional right by harassing, threatening, or ridiculing him . . . ."]; DePaoa v. Taylor, No. 10-398, 2011 WL 2445859 at * 9 (W.D.Va. June 15, 2011)["[A]n institutional employee's verbal harassment of an inmate or idle threats made to an inmate, even if they cause an inmate fear, anxiety or discomfort, do not present a claim of constitutional magnitude."], adopted by, 2011 WL 3105336 (W.D.Va. July 25, 2011), aff'd., 470 Fed. Appx. 186 (4th Cir. Mar. 27, 2012).

[13]Plaintiff cites to numerous state statutes in his pleadings, mainly as string cites, while in other parts of his pleadings he states that he is utilizing this court's "pendant" jurisdiction to also assert his claims under state law.



state law duty of care]; see also Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Further, pendant jurisdiction over any state law claims would only be proper where the state law claim was related to the federal claim going forward in this lawsuit. Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 387 (1998); see 28 U.S.C. § 1367(a). Hence, any state claims Plaintiff may be asserting in this lawsuit that are not related to his chemical munitions excessive force claim should be dismissed, without prejudice. Lee v. Singleton, No. 11-2983, 2012 WL 1896062 at * * 18-20 (D.S.C. Jan. 9, 2012)[dismissing and remanding unrelated state law claims where they were not related to a federal claim], adopted by, 2012 WL 1895998 (D.S.C. May 24, 2012); see also Singh v. New York State Dep't of Taxation & Finance, No. 06-299, 2011 WL 3273465 at * * 20-21 (W.D.N.Y. July 28, 2011), adopted by, 865 F.Supp. 2d 344 (W.D.N.Y. Oct. 25, 2011). This will not only allow the Plaintiff to obtain a ruling as to the viability of these state law claims from a more appropriate forum, but if his claims were to survive summary judgment, it would be much more appropriate for those state law claims to be tried in state court. Dismissal of these state law claims would also not prejudice the Plaintiff, as the parties could seek a fast track for resolution of these claims at the state level; See Rule 40(c), S.C.R.Civ.P.; and there are no statute of limitations problems because federal law also provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards. See 28 U.S.C.A. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"];



cf. <u>National Federation of Independent Business v. Sebelius</u>, 132 S.Ct. 2566, 2592 (2012).

    Finally, with respect to any state law tort claim (such as assault and battery, although the exact nature of the claim being asserted is unclear) Plaintiff may be asserting with respect to the events surrounding him having been subjected to chemical munitions on January 22, 2013 (the only federal claim recommended to survive summary judgment), that claim would only be assertable as a pendant state tort claim against the Defendant SCDC, *after* Plaintiff had otherwise exhausted his state court remedies *and* if the State further waived its Eleventh Amendment immunity in this Court for any such state law tort claim.[14]  The South Carolina Tort Claims Act (SCTCA) provides only a limited waiver of immunity by state and local governmental entities, and specifically waives only the State of South Carolina's sovereign immunity in *state court* for certain tort claims, reserving South Carolina's Eleventh Amendment immunity from suit in federal court.  <u>See</u> S.C. Code Ann. § 15-78-20(e) [Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."].  Further, before proceeding with a lawsuit under the South Carolina Tort Claims Act, a claimant must first exhaust his or her administrative remedies under that Act.

    While it is possible for the State to waive its immunity; cf. <u>Union Pacific Railroad Company v. La. Public Service Commission</u>, 662 F.3d 336, 341 (5th Cir. 2011)["[T]he central

---

[14]The Defendant SCDC, as a state agency, is not a proper Defendant under Plaintiff's surviving § 1983 claim.  <u>See</u>, <u>e.g.</u>, <u>Federal Maritime Commission v. South Carolina State Ports Authority</u>, 535 U.S. 743 (2002); <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62 (2000); <u>Alden v. Maine</u>, 527 U.S. 706 (1999); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984); <u>Belcher v. South Carolina Board of Corrections</u>, 460 F. Supp. 805, 808-809 (D.S.C. 1978); <u>Simmons v. South Carolina State Highway Dept.</u>, 195 F. Supp. 516, 517 (E.D.S.C. 1961).



28

inquiry in determining a waiver of Eleventh Amendment immunity [is] whether the State's litigation conduct constituted a voluntary invocation of federal jurisdiction"]; <u>Lapides v. Board of Regents of the Univ. System of Georgia</u>, 535 U.S. 613, 619 (2002)[A state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims]; the Defendant SCDC has not addressed any of these issues as part of the Defendants' motion for summary judgment, and therefore the undersigned is not in a position to recommend whether or not summary judgment should be granted on this claim. Therefore, at least at this point, the Defendants' motion for summary judgment with respect to any state law claim Plaintiff is asserting against the Defendant SCDC arising out of the events where he was subjected to chemical munitions should be denied, without prejudice. This will allow the Defendant SCDC to brief this issue, if it chooses to do so.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's excessive force claim arising out of his having been subjected to chemical munitions on January 22, 2013 asserted against the Defendants Cashwell and Smith in their individual capacities under § 1983 be **denied.** To the extent Plaintiff has also asserted a state law claim arising out of this incident, which would be against the Defendant SCDC only, summary judgment with respect to that claim should also be **denied** at this time, without prejudice, for the reasons stated.

The Defendants should otherwise be **granted** summary judgment with respect to all other claims, and against all other named Defendants, and all of those remaining claims and



Defendants should be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

September 3, 2014
Charleston, South Carolina

30



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

